IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REGINA VINCE,

                          Plaintiff,                Case No. 09 C 5360

            v.
                                                    Hon. Harry D. Leinenweber
ILLINOIS CENTRAL SCHOOL BUS,
LLC, and BRUCE BARR,

                          Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment from
Defendants Illinois Central School Bus, LLC and Bruce Barr
(hereinafter, the "Defendants") on all nine counts of Plaintiff
Regina Vince's (hereinafter, the "Plaintiff") Amended Complaint.
For the reasons stated below, the Motion is granted in part and
denied in part.

## I.  INTRODUCTION

Defendant Bruce Barr ("Barr") started the school bus
transportation company Illinois Central School Bus, LLC ("Illinois
Central") in 2004.  That year, Illinois Central hired Plaintiff as
a contract hourly employee at $10.00 an hour.  Illinois Central
hired her as a full-time employee in August 2005, and increased her
pay to $15.00 an hour.  Plaintiff had previously worked with Barr
at the school busing company First Student, Inc.  Plaintiff

possesses an Associate's Degree in Business Management. Her work duties at Illinois Central included setting up and administering a computer billing system for a large multi-district special education student busing contract, setting up and working on an accounting system, developing a reporting system, working on performance indicator reports, preparing contract bids, working on the company's web site, working on budgets and end-of-month reports, and working with the company's information technology. During the course of her employment at Illinois Central, Plaintiff worked at several of the company's locations, as well as from home.

The parties dispute the number of hours that Plaintiff worked in performing these duties. Defendants claim that she was expected to work eight hours a day and 40-hour weeks, and that these are the hours she generally kept. The parties do not dispute that Plaintiff never submitted a written claim to Defendants that she was entitled to overtime compensation. Plaintiff, however, claims that she worked 12-hour days, seven days a week for almost three years of her employment at Illinois Central, and that she frequently complained to Barr and other executive employees at Illinois Central about working such long hours without compensation. Defendants deny that she ever worked such hours.

Plaintiff also alleges a pattern of sexual harassment by Barr that began in 2004. Defendants deny that any sexual harassment occurred during the entirety of Plaintiff's employment at Illinois Central, and deny every specific allegation Plaintiff makes of

sexually harassing conduct by Barr or any other Illinois Central employee. They also allege that Plaintiff never submitted a formal written complaint while she worked at Illinois Central about the alleged harassment. Plaintiff, on the other hand, alleges that she complained numerous times to Keona Peters ("Peters") in Human Resources about the harassment, as well as to Barr and Illinois Central Chief Financial Officer Scott Cheshareck ("Chesharek").

Plaintiff alleges that the first incident of harassment occurred one evening in 2004 at the company's Mazon, Ill., office. Barr allegedly told Plaintiff about his interest in having sexual relations with her and proceeded to push her against a window, attempt to kiss her, and touch her breasts. Plaintiff alleges she resisted this, told him to stop, and pushed Barr away. Plaintiff further alleges that after this incident, Barr engaged in a pattern of sexual harassment that included brushing his hands across her breasts and making sexual jokes, innuendos, and remarks to her. For example, Plaintiff alleges that Barr told her that he wanted to place his penis between her breasts, gave her details about his sex life, and asked her two or three times if she wanted to have sex with him.

Illinois Central transferred Plaintiff to its Blue Island, Ill., office, where she shared an office with Barr. At the Blue Island office, Plaintiff alleges that Barr continued his sexual harassment, including an incident when he placed his hand on Plaintiff's thigh, rubbed her arms and shoulders, and pushed his

chest against her back.  She further alleges that one evening after she and Barr went to a festival and bar for drinks, Barr asked Plaintiff to accompany him to look at a house he was renovating. Once at the house, Plaintiff alleges that Barr pushed her up against a door, lifted up her shirt and bra, forced her hand onto his exposed penis, and propositioned her for sex.  She alleges that she fought Barr off, told him to stop, and declined his proposition.  She also alleges that during her time at the Blue Island office, Barr regularly made inappropriately and unwelcome comments to her about her body and her sex life.

In early 2006, Illinois Central transferred Plaintiff to its Channahon, Ill., office.  Plaintiff alleges that about one month after she began working there, she worked late one night with Barr. She alleges that Barr propositioned her for sex, rubbed against her, touched her leg, and made sexually lewd comments to her. Again, she alleges that she told him to stop and rejected his advances.  She alleges that around her birthday in July 2006, Barr told her that he wanted to rent a hotel room for her birthday so they could have sex.  Further, she alleges that about one month later, he told her that he wanted to watch her have sex with another female employee at Illinois Central.  Plaintiff also alleges that while she worked at the Channahon office, Cheshareck engaged in sexually explicit conversations with Barr in her presence, as well as intentionally brushed his forearm against her breasts while they worked on financial reports together.  She

allegedly told him to stop doing that, to which Cheshareck responded with laughter.  Plaintiff alleges that this perpetual harassment drove her to tears, made her vomit, and contributed to an anxiety disorder.

In April or May 2007, Plaintiff accompanied Barr to Minnesota to bid on a transportation contract.  In Minnesota, Plaintiff alleges that Barr asked her to go to dinner to review the bid, but rather than taking her to dinner, surprised her by taking her to a strip club.  She told him that she was not comfortable there, and that she wanted to leave.  They allegedly stayed at the club for about an hour, and when in the back seat of the taxi returning to their hotel, Barr grabbed Plaintiff's breasts, attempted to put his hands between her legs, and tried to kiss her on the mouth.  Again, Plaintiff allegedly pushed him away and told him to stop; he eventually stopped.  Once back at the hotel, Barr allegedly tried to push his way into Plaintiff's hotel room, but Plaintiff managed to push him out and lock the door.  While Plaintiff did not recall in her deposition any specific instances of alleged harassment following the Minnesota trip, she did testify that Barr's sexual innuendos, comments, and gestures continued until her employment at Illinois Central ended.

After the Minnesota trip, Plaintiff claims that her duties and responsibilities at Illinois Central changed.  The parties dispute what the scope of Plaintiff's job actually was.  Defendants argue that Plaintiff was in charge of charter billing — submitting

invoices to schools for busing services performed — from the time she started at the company until August 2005. In August 2005, the company was awarded a large contract, under which it provided transportation services for special education students 16 school districts. Defendants allege that Plaintiff's primary job function from August 2005 until Illinois Central lost the special-education contract in July 2007 was to bill the school districts for work performed under the contract. Defendants further allege that from July 2007 until Plaintiff's employment ended in October 2007, Plaintiff's job duties changed, and her work consisted almost entirely of traveling to different company locations, where she worked with the sites' managers to set up performance indicator reports.

Plaintiff admits that she performed these duties, but she argues that she also did budget analysis, accounting, prepared bids, developed the company's web site, and was involved in other aspects of the company's information technology. Plaintiff alleges, however, that Defendants hired four male employees, all of whom she helped train, to assume her job responsibilities. Defendants dispute that they hired these men to assume Plaintiff's job. Rather, they argue that because Illinois Central encountered enormous business growth - by the start of the 2007-08 school year, the company had more than 1,000 employees, more than 500 buses, and at least 10 terminals in Illinois — it needed to hire these people to address its expanded and rapidly changing needs.

Plaintiff alleges that Defendants hired Cheshareck in August 2006 to assume some of her budget analysis, performance indicator report, and accounting work. She alleges that Defendants hired Erik Klepp ("Klepp") around June 1, 2007, to assume some of her budget analysis and performance indicator report duties. She alleges that Defendants hired Dan O'Brien "O'Brien" several months before her employment ended to assume what she alleges was her main responsibility of working on bids. Defendants claim that O'Brien started working at Illinois Central about three months after Plaintiff left the company. Plaintiff alleges that Defendants hired Gerron Kelly "Kelly" as a budget analyst to replace her. Defendants claim, however, that Kelly worked at Illinois Central after Plaintiff left the company, from approximately January 1, 2008, to May 14, 2008. Plaintiff also alleges that Defendants hired another man, who she trained, but whose name and job duties she cannot remember. Plaintiff alleges that she complained to Barr that Illinois Central was hiring men to assume her job duties, and that she complained to Barr and numerous other employees at Illinois Central that men were being paid more than her and other female employees. Defendants deny that Plaintiff made such complaints.

Plaintiff's employment at Illinois Central ended on October 25, 2007. Defendants claim that Plaintiff resigned, while Plaintiff argues that she was fired. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission

(the "EEOC"), alleging sexual discrimination, on May 30, 2008. The EEOC closed Plaintiff's case and issued her a Right to Sue Letter on June 6, 2009.

Plaintiff filed her nine-count Complaint on August 31, 2009, and filed an Amended Complaint on February 25, 2010. Counts I, II, and III are brought pursuant to Title VII of the Civil Rights Act of 1964 for sexual harassment/hostile work environment, gender discrimination, and retaliatory discharge, respectively. Plaintiff raises claims for uncompensated wages she alleges Defendants owe her under the Illinois Minimum Wage Law (Count IV), the Illinois Wage Payment and Collection Act (Count V), and the federal Fair Labor Standards Act (Count VI). Plaintiff also raises Illinois state law claims for assault and battery (Count VII), intentional infliction of emotional distress (Count VIII), and a violation of the Illinois Gender Violence Act (Count IX). Defendants have brought this Motion for Summary Judgment currently before the Court on all nine Counts of Plaintiff's Amended Complaint, which both parties have fully briefed.

## II.  LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could

return a verdict for the nonmoving party. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not to weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *Id.* at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See, Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *See, Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their position that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. FED. R. CIV. P. 56(c).

### III.  ANALYSIS

### A.  Title VII Claims

Plaintiff has brought three claims pursuant to Title VII of the Civil Rights Act of 1964:  sexual harassment/hostile work environment (Count I), gender discrimination (Count II), and retaliation (Count III).  The Court addresses each Count separately.

#### 1.  Sexual Harassment/Hostile Work Environment

Title VII prohibits discrimination based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  This encompasses a claim for sexual harassment that "arises when the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment."  *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 657 (7th Cir. 2001) (internal quotation omitted).  Also, for an employer covered by Title VII to have liability, its response or lack thereof to the alleged sexual harassment must be negligent.  *See, Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994).  This negligence requirement is easily satisfied in this case, as the primary person who allegedly harassed Plaintiff is Barr, who controls Illinois Central.

Defendants argue that Plaintiff's harassment claim is time barred.  A party has 300 days from the alleged harassment to file

a charge with the EEOC.  *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006).  Plaintiff filed her Charge of Discrimination on May 30, 2008.  The Court notes that Plaintiff failed to attach the Charge to the Amended Complaint, but attached it as an exhibit to only the initial Complaint.  For purposes of this Motion, however, the Court treats the Charge and the EEOC's June 9, 2009, Dismissal and Notice of Rights as being attached to the Amended Complaint.

Any alleged discrimination that occurred on or subsequent to August 4, 2007, falls within the 300-day period to file a timely EEOC complaint.  Defendants argue that Plaintiff testified at her deposition that the last incident of alleged harassment occurred in early July 2007.  Defendants attempt to establish this fact by citing to Plaintiff's testimony about Barr telling Plaintiff that he wanted to get a motel room for her as a birthday present, with the innuendo that he would join her in the room for sexual relations. *See,* Vince Dep. 369:18–371:17, June 1, 2010.  This allegedly occurred close to Plaintiff's July 4 birthday.  Plaintiff testifies, however, that this event occurred in 2006, not 2007. *See id*. at 370:1.  Plaintiff alleges numerous instances of harassment that followed this July 2006 event.  Most of these occurred before or during her April or May 2007 trip to Minnesota with Barr.  *See id*. at 372:2–397:16.  However, Plaintiff does not testify that the harassment stopped following this Minnesota trip.

Rather, as the following exchange between Plaintiff and Defendants'
counsel shows, Plaintiff never unequivocally states that the
harassment stopped after the Minnesota trip:

> **Q:** Okay. What else do you recall besides the Minnesota
> trip after you got transferred back to Channahon?
> **A:** At this point, the Minnesota trip.
>
> **Q:** That's all you recall?
> **A:** At this point, yes.
>
> **Q:** Okay.
> **A:** It became so frequent, I just became numb to it.
>
> **Q:** When you say it became so frequent, what do
> you mean, "it?"
> **A:** His statements, his innuendoes, his facial
> expressions, body language.

*Id.* at 374:24-375:12. While Plaintiff admits that she could not
remember specific instances of harassment after the trip, she
alleges that this does not mean that the harassment stopped, as
that frequency of the harassment resulted in her not being able to
recall exact dates of every action.

After this exchange, Defendants questioned Plaintiff about the
timing of specific instances of these statements, innuendoes,
facial expressions, and body language. She testified that Barr
repeatedly grabbed his crotch when she was looking at him, but that
the last time she remembered this occurring was in Minnesota. *Id.*
at 375:13-379:1. She also testified that Barr repeatedly stuck out
his tongue toward her and wagged it back and forth in a sexually
suggestive manner. *Id.* at 379:2-381:13. She said that the last
time this occurred was before the Minnesota trip. *Id.* at

380:23–381:1. She said that Barr repeatedly patted her buttocks, and that the last time this happened was before the Minnesota trip. *Id*. at 382:12–383:1. In regard to a question regarding any inappropriate statements, Plaintiff detailed an incident that occurred before the Minnesota trip. *Id*. at 381:14–382:11. However, while she said that she could not recall other specific instance of harassment prior to the Minnesota trip, she *never* testified that the incidents she detailed constituted Barr's only harassing actions. *See id*. at 383:24–384:1.

Also of note is the fact that Plaintiff's EEOC charge indicates that the alleged harassment took place until October 1, 2007. Further, Plaintiff has filed an affidavit stating that the harassment took place until her employment with Illinois Central ended on October 25, 2007. Vince. Aff. ¶ 6. Because Plaintiff never testified at her deposition that the alleged harassment ended prior to this date, the affidavit is not a self-serving statement that contradicts her earlier deposition testimony. *See Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602–03 (7th Cir. 1999). Plaintiff can use her deposition testimony and affidavit to establish a genuine issue of material fact that warrants trial. *See Payne v. Pauley*, 337 F.3d 767, 771–72 (7th Cir. 2003). While Defendants deny that any of this alleged harassment occurred, the allegations certainly rise to the level necessary to sustain a Title VII claim. Therefore, because Plaintiff has met her burden of showing a

genuine issue of material fact exists, the Court denies Defendants'
Motion for Summary Judgment on Count I.

### 2. Gender Discrimination

Moving to Count II, Title VII prohibits an employer with more
than 15 employees from discriminating against an employee with
respect to the conditions of her employment based upon her sex.  43
U.S.C. § 2000e-2(a).   A plaintiff may prove Title VII gender
discrimination using the direct or indirect method.  *See Rhodes v.
Illinois Dep't Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

#### a.  Direct Method

A plaintiff can use either direct or circumstantial evidence
under the direct method of establishing a case of gender
discrimination. *Id.*  Direct evidence is essentially an admission
from the decision maker charged with the alleged discriminatory
actions that gender provided the basis for these actions. *Id.*  As
such, the trier of fact could rule for the plaintiff without
relying upon inference or presumption. *Id.*

Circumstantial evidence, on the other hand, consists of
sufficient facts that, when considered together, would allow a jury
to infer that intentional discrimination occurred.  *Id*.
Circumstantial evidence demonstrating such discrimination includes:

> (1) suspicious timing, ambiguous oral or written
> statements, or behavior toward or comments directed at
> other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly
> situated employees outside the protected class received
> systematically better treatment; and (3) evidence that the employee
> was qualified for the job in question but was passed over in favor

of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (internal quotation omitted). The scope of the circumstantial evidence the court considers is limited, in that the evidence "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

In this case, Plaintiff has not presented any "smoking gun" evidence of gender discrimination. Without such evidence, she must rely upon circumstantial evidence to establish her gender discrimination claim through the direct method. Plaintiff claims that her deposition and affidavit show that: (1) she was paid less than her male co-workers; and (2) she trained five male employees when they were hired by Illinois Central close to the time when she was fired, and these males took over her job duties and responsibilities. The parties dispute whether Illinois Central fired Plaintiff or Plaintiff resigned from her position.

In regard to her wage discrimination claim, Plaintiff states in her affidavit that while she worked at Illinois Central, she complained to numerous people that "male employees were being paid more than myself as well as other female employees." Vince Aff. ¶ 20. The affidavit fails, however, to set forth facts that her pay was less than that of similarly situated male employees. She has not produced any evidence of what these alleged male employees

actually earned.  The Court cannot speculate on what they earned to determine if they, in fact, did earn more than her.  Plaintiff's hearsay statements set forth in her affidavit do not provide a genuine issue of material fact concerning the alleged wage discrimination.

Plaintiff testified in her deposition that she thought she should have been paid more for working at Illinois Central.  She does not state, however, that similarly situated male employees received greater compensation than her.  *See* Vince Dep., 263:13–16, 302:16–303:16, May 7, 2010.  She testifies that the people who were assuming her responsibilities were making "all this money when I was doing this job and I wasn't getting paid for it."  *Id*. at 321:7–11.  This statement, however, also does not allege that these new employees were similarly situated as her, nor does it provide the specific wages that these employees earned.  When a case involves male and female employees who do not engage in equal work, a plaintiff must offer evidence that the employer intended to institute a sex-based discriminatory compensation system.  *See Loyd v. Phillips Bros., Inc*., 25 F.3d 518, 525 (7th Cir. 1994).  This is because "comparable worth" is not a recognized Title VII theory of liability.  *See id*.  Plaintiff's statement that she deserved more money, without any evidence of what her co-workers earned, simply sets forth the common grievance of underpay shared by countless workers across the country.  It does not create an inference of a

Title VII violation.  The circumstantial evidence does not allow
Plaintiff to use the direct method of proving wage discrimination.
In regard to her claim that Defendants hired men to assume her job,
Plaintiff can survive summary judgment using the direct method if
circumstantial evidence shows that the loss of her duties and
responsibilities at Illinois Central — and eventually the loss of
her job — were motivated by a discriminatory intent.  *See Rudin v.
Lincoln Land Cmty. Coll.*, 420 F.3d 712, 721 (7th Cir. 2005).  In
her affidavit, Plaintiff claims that she personally trained five
male employees who assumed her job duties and responsibilities.
Vince Aff. ¶ 19.  Plaintiff fails to mention, however, that
Illinois Central also hired a woman to work as a vehicle
administrator, and that this woman assumed some of Plaintiff's job
responsibilities.  *See* Vince Dep., 295:4-297:23, May 7, 2010.

It is uncontested that from when Barr started Illinois Central
in 2004 until the company hired Cheshareck as its Chief Financial
Officer in September 2006, the company grew from a small several-
person operation to one with approximately 500 employees, with a
fleet of more than 325 buses operating out of approximately 10
terminals throughout Illinois.  Plaintiff worked at Illinois
Central from its inception.  It makes business sense for a company
with growth such as Illinois Central's to hire new employees to
assume some of the expanded duties that come with its increased
business, so as not to overburden its staff.

Plaintiff claims that she performed the work of seven people prior to Defendants hiring the six employees she alleges assumed her duties and responsibilities. *See id*. at 289:10-13. Because of her knowledge of the company, she presumably had the ability to train new employees to assume some of the work from her heavy workload. Considering that one of the new hires was a female, Plaintiff's circumstantial evidence does not point directly to a discriminatory reason for Defendants' conduct. Rather, it points to Defendants making pragmatic human resources decisions. Plaintiff has not presented any evidence of suspicious statements by Defendants regarding hiring men rather than women, nor has she produced any statistical evidence of Defendants hiring men preferentially. Therefore, because Plaintiff cannot show through circumstantial evidence that the alleged adverse employment actions against her at Illinois Central were done with a discriminatory intent, she cannot use the direct method to prove this discrimination. She must use the indirect method to show gender discrimination to survive summary judgment on Count II.

### b. *Indirect Method*

The Supreme Court established the indirect method for a plaintiff to establish a prima facie case of Title VII discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). In a gender discrimination case, the plaintiff must first establish her *prima facie* case of discrimination by showing

that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated male employees more favorably. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997). After an employee makes such a showing, if an employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to the plaintiff to show that this reason is merely pretextual. *See Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005).

In this case, no dispute exists that Plaintiff belongs to a protected class (female), or that she performed her job satisfactorily. Defendants do not dispute that in the four years that Plaintiff worked at Illinois Central, she never received a written reprimand from the company about her job performance. Defendants do contend, however, that Plaintiff had an issue with being tardy to or failing to show up for work. Barr Dep. 58:10-22, June 4, 2010. In regard to the third prong, while Defendants claim that Plaintiff resigned, their Statement of Undisputed Facts reads: "At the time of her *termination*, Vince was earning $15.35 an hour." Defs.' Rule 56.1 Statement Undisputed Facts ¶ 7 (emphasis added). Barr also testified that Plaintiff did not give Defendants a formal two-week notice of resignation, and that Illinois Central terminated her from its payroll in October 2007 after Plaintiff failed to show up to work for two weeks. Barr Dep. 96:11-98:16.

Plaintiff states in her affidavit that because she was terminated from the payroll, Defendants fired her. Despite the contested versions of the events that led to Plaintiff's job ending, Plaintiff has shown that she suffered an adverse employment action. She could no longer work for the company.

In regard to the fourth *McDonnell Douglas* prong, Plaintiff claims Defendants gave her job to similarly situated male employees, as well as paid male employees more than her. Similarly situated employees in a discrimination case are directly comparable to the plaintiff in all material respects. *See Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Factors to evaluate in determining whether two employees are directly comparable include "whether the employees (I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications — provided the employer considered the latter factors in making the personnel decision." *Id.* at 692–93 (internal quotation omitted). A court does not second-guess an employer's "facially legitimate business decisions." *Id.* at 693.

In regard to the wage discrimination claim, as previously stated, Plaintiff has not produced any evidence about what similarly situated male employees at Illinois Central earned. Without this evidence, the Court has no way to determine whether

Defendants gave favorable treatment to a similarly situated male employee. Plaintiff cannot use the indirect method to show wage discrimination.

Plaintiff also claims that five males assumed her job duties, but she can identify only four of them. None of these four identified employees, however, qualifies as a similarly situated employee as necessitated by a Title VII employment discrimination action. First, Plaintiff claims that she helped train Scott Cheshareck, and that he assumed some of her accounting duties. Defendants hired Cheshareck, however, as Illinois Central's Chief Financial Officer ("CFO"). He had served as a finance director for the international pharmaceutical company Pfizer, was a certified public accountant ("CPA"), and had an MBA in management information systems. Plaintiff possesses only an associate's degree in business management, and admitted that she was not qualified to serve as CFO. Vince Dep. 272:2-3, May 7, 2010. Given the rapid business growth that Illinois Central was experiencing at the time it hired Cheshareck, it made business sense for the company to hire someone with his work background and qualifications. The vast disparity in his education and business experience and Plaintiff's shows that they are not similarly situated employees.

Likewise, Defendants hired Erik Klepp, Barr's son-in-law, as an accountant and budget analyst in June 2007. Klepp received a bachelor's degree in accounting, and became a CPA before starting his work at Illinois Central. Plaintiff testified that Defendants

hired Klepp to work as assistant to the comptroller, a position that she did not hold. *Id.* at 292:8-16. Plaintiff is not a CPA, and although it is undisputed that Plaintiff had more experience in the busing industry than Klepp possessed at the time of his hiring, Plaintiff does not claim to have accounting skills equivalent to that of a CPA. Therefore, the evidence does not show that Plaintiff and Klepp are similarly situated.

Plaintiff claims that Defendants hired Dan O'Brien before her employment ended, as she claims to have trained him. O'Brien stated in his affidavit, however, that he started his job at Illinois Central around January 1, 2008, which would have been after Plaintiff's employment ended. O'Brien Aff. ¶ 1. Besides this factual dispute, Plaintiff alleges that Defendants hired O'Brien to do some of her bidding work. Plaintiff alleges that she had more experience in the busing industry than O'Brien, but it is not disputed that O'Brien worked in the busing industry at First Student, Inc. for approximately six-and-a-half years prior to starting at Illinois Central, with at least three years experience managing contracts with school districts. Plaintiff never claims that she worked as a contract manager while at Illinois Central. In addition, Plaintiff does not claim that O'Brien's arrival at the company eliminated her job responsibilities of setting up performance indicator reports, or that his position carried with it more prestige or a higher salary than her position. The evidence

simply does not show that he and Plaintiff are similarly situated employees.

Plaintiff argues that Defendants hired Gerron Kelly to replace her as a budget analyst. In her affidavit, she claims that she trained him, and in her deposition, she claims that Kelly took over work she was already performing. However, she does not identify him by name in her deposition; she only calls him a "black guy." The Court has no way to determine if her deposition testimony actually refers to Kelly, and Plaintiff's affidavit merely claims that she helped to train him. Regardless of Defendants' claims that Kelly was hired as Cheshareck's clerical assistant, not as a budget analyst, and that he started working at Illinois Central after Plaintiff left the company — contradicting Plaintiff's claim that she trained him — Plaintiff has not presented any facts to show that she and Kelly were similarly situated. She has not produced evidence his education or work experience, nor has she identified his job duties with any particularity.

Because she does not identify a similarly situated employee, Plaintiff fails to establish a *prima facie* case of discrimination because she cannot meet the forth prong of the *McDonnell Douglas* test. Therefore, because Plaintiff cannot use the direct or indirect method to establish a case of gender discrimination, Defendants' Motion for Summary Judgment is granted on Count II.

### 3. Retaliation

In Count III of her Amended Complaint, Plaintiff raises a Title VII retaliation claim. To survive summary judgment on this claim, Plaintiff must establish an issue of material fact that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Plaintiff did not check the retaliation box in her EEOC charge, and in general, a plaintiff cannot bring a Title VII claim that she did not include in her EEOC charge. *See Sitar v. Indiana Dep't Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). However, because lay people complete most EEOC charges, a plaintiff need not allege in her this charge every fact that forms each claim of her complaint. *See Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992).

The test for determining if an EEOC charge encompasses all claims set forth in a complaint is whether the claims are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (internal citation omitted); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) ("The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*") (emphasis in original).

In this case, Plaintiff marked the sex discrimination box on her EEOC charge and wrote that she was subjected to sexual harassment. A factual relationship exists between the alleged sexual harassment — on which the Court denied Defendants' Motion for Summary Judgment — and the retaliation claim. Plaintiff alleges that she was subjected to perpetual sexual harassment by Barr up until the time her employment ended. She also alleges that on several occasions she had to physically push him away from her when he attempted to kiss her, grab her body, and proposition her for sex. The last time she alleges this occurred was when she traveled with Barr to Minnesota in April or May 2007, which was only several months prior to when her job ended at Illinois Central. A plausible connection exists between this harassment, Plaintiff's consistent resistance and denial of Barr's advances, and her alleged termination. Illinois Central is Barr's company, so he can make employment decisions. He had allegedly been unsuccessful in starting a sexual relationship with Plaintiff, and was aware of her complaints about the alleged harassment, as she made them directly to him at the time of the harassment. As previously discussed, despite the dispute that exists whether Plaintiff resigned or was fired, the evidence shows that she was terminated by Illinois Central. Plaintiff has met her burden to show that a genuine issue of material fact exists on all the necessary elements of her retaliation claim. The Court denies Defendants' Motion for Summary Judgment on Count III.

## B. State and Federal Wage Claims

Counts IV, V, and VI relate to wages that Plaintiff alleges Defendants owe her for uncompensated hours she worked. In Count IV, Plaintiff claims that Defendants owe her overtime pay for hours worked in excess of 40 in any given work week, pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4(a)(1) and 105/12a. Count V alleges that Defendants violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/3 and 155/14, by failing to pay her for hours she worked. Finally, Count VI is a federal claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), for Defendants' failure to pay her overtime wages when she worked more than 40 hours per week. Because the dispositive issue on all three Counts is whether Plaintiff has submitted evidence that sufficiently supports her allegations that she worked these overtime hours, the Court addresses the three Counts together.

Plaintiff claims that she worked an almost 12-hour day seven days a week, for almost three years, from 2004 until early 2007. Vince Dep. 61:9–13, 238:13–239:4, May 7, 2010; Vince Aff. ¶ 4. This equates to an approximately 84-hour work week. She claims, however, that Defendants did not pay her for this overtime work. Vince Aff. ¶ 13. Plaintiff's deposition testimony and her affidavit comprise the entirety of the evidence to support her wage claims. She has not submitted any personal records she kept of the

hours she worked, and she has not tendered any specific start or end dates of these 84-hour work weeks. She has not submitted any written correspondence she had with Illinois Central concerning her overtime work, nor has she submitted any records that Illinois Central kept of her hours worked. She claims that she filed a document with the Illinois Department of Labor that claimed that Defendants owed her overtime wages, Vince Dep. 286:8-11, but if she produced this document in discovery, it was not submitted as evidence in her opposition to Defendants' Motion. Likewise, Plaintiff did not produce a spreadsheet that she allegedly kept that detailed the number of overtime hours she worked at her home; she claims her computer that contained the spreadsheet broke, and she apparently never produced backup copies she claimed she possessed. *Id*. at 309:1-312:19.

Defendants deny that they owe Plaintiff overtime wages. They have submitted an affidavit from Valerie Tucker, the Human Resources/Payroll Manager for Illinois Central, to which Plaintiff's payroll records with Illinois Central from June 30, 2006, through October 26, 2007, are attached. Tucker Aff. Ex. 1. These statements show that Plaintiff worked 40 hours a week or less for each of the weeks documented. Defendants have not provided Plaintiff's payroll records prior to June 30, 2006. The parties clearly disagree regarding Plaintiff's wage claims. Of course, in ruling on summary judgment, the Court does not weigh the veracity of witnesses. *See Bodenstab v. Cnty. of Cook*, 539 F.Supp.2d 1009,

1014 (N.D. Ill. 2008). That is the duty of the fact finder. Rather, the Court simply determines if a genuine issue of material fact exists to warrant trial. *See id*.

The issue of material fact that must exist for Plaintiff's wage claims to survive summary judgment involves whether the evidence creates a reasonable inference that Plaintiff actually worked the claimed hours. The FLSA prohibits an employer from employing a worker for more than 40 hours in a week, unless the worker receives overtime compensation at a rate of no less than one-and-a-half times her regular wages. 29 U.S.C. § 207(a)(1). In an FLSA action for overtime wages, the plaintiff must establish a prima facie case by demonstrating that she worked more than 40 hours in a work week without compensation. *Adkins v. Mid-American Growers, Inc.*, 831 F.Supp. 642, 644 (N.D. Ill. 1993). In addition, she must show that her employer knew or should have known of her overtime work. *See Laplante v. Terraces of Lake Worth Rehab. & Health Ctr., LLC*, 725 F.Supp.2d 1358, 1361 (S.D. Fla. 2010).

Under the FLSA, an employer is required to keep proper and accurate records of the hours its employees work. *See Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). If an employer keeps such records, an employee should not have difficulty in showing that she worked the uncompensated overtime hours. If an employer does not keep such records, the Supreme Court has created a test that allows the employee to

recover without having to prove the precise extent of her uncompensated work:

> [A]n employee has carried out [her] burden if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez,* 546 U.S. 21, 41 (2005). In this case, Plaintiff does not allege in her Amended Complaint, deposition, or affidavit that Defendants kept improper or inaccurate records that violated the FLSA requirements. Nor does she allege that she submitted timesheets or other correspondence to Defendants that detailed the overtime hours she worked. She simply alleges that Defendants failed to pay her for these hours. Given the conclusory nature of these allegations, Defendants do not have the burden to disprove Plaintiff's claim. Plaintiff maintains the burden to produce "sufficient evidence" to allow the Court to infer that she worked the allegedly uncompensated hours. *See id.* at 687.

Plaintiff has not done this. She has not provided any precise frame of reference regarding when her 84-hour work weeks began, or when these ended. The Court cannot guess as to what "from

approximately 2004 until early 2007" means.  When in 2004 did these hours start?  In 2007, did Plaintiff work these hours until January, or until March?  The Court has no way to determine this. Throwing darts at a calendar would seemingly provide as reliable a time period for this work as would discerning these dates from Plaintiff's evidence.  Plaintiff has not provided any documentation detailing her hours worked, or the work she performed in these alleged overtime hours.   The Court has no reasonable way to determine the amount and extent of the work Plaintiff performed. Additionally, Defendants have produced payroll records from many of the months that Plaintiff allegedly worked her extensive overtime hours that show that during some of these weeks, Plaintiff was paid for working less than 40 hours.  It is not reasonable for the Court to infer that Plaintiff would submit time records that showed that she worked less than 40 hours when in fact she worked 80 hours or more.   While the Court does consider Plaintiff's affidavit and deposition testimony in determining if a genuine issue of material fact exists for trial, it does not find that these statements, unsupported by any documentary evidence or corroborating testimony, create the just and reasonable inference required by *Anderson*. Therefore, the Court grants Defendants' Motion for Summary Judgment on Counts IV, V, and VI.

## C.  Other Illinois State Law Claims

Counts VII, VIII, and IX are for the Illinois state law tort claims of assault and battery, intentional infliction of emotional distress, and a violation of the Illinois Gender Act. Defendants argue that they are entitled to summary judgment on these claims because (1) Plaintiff did not file her assault and battery and intentional infliction of emotional distress claims within the two-year statute of limitations, and (2) they are all preempted by the Illinois Human Rights Act ("IHRA").

### 1. Statute of Limitations Defense

The Court first addresses Defendants' statute of limitations argument. Illinois law provides a two-year period from the time a personal injury tort accrues in which a plaintiff can file her claim. 735 ILCS 5/13-202. Plaintiff filed her Complaint on August 31, 2009. As previously discussed, Plaintiff has sufficiently pled that Defendants' alleged sexual harassment occurred until her employment with Illinois Central ended in October 2007. Therefore, Plaintiff had until October 2009 to file her complaint for the intentional torts that involve acts in the alleged sexual harassment. However, the acts of sexual harassment by Barr that Plaintiff alleges occurred after her trip with him to Minnesota in April or May 2007 are confined to Barr's statements, innuendoes, facial expressions, and body language. Vince Dep. 375:11-12, June 1, 2010. A cause of action based upon *physical* acts to which Plaintiff testified that allegedly occurred

prior to August 30, 2007, such as Barr grabbing Plaintiff's buttocks, Barr's attempts to kiss Plaintiff against her will, Barr pulling up Plaintiff's shirt and bra to expose her breasts, and Barr grabbing Plaintiff's hand and pulling it toward his exposed penis, or any other groping or fondling, would fail due to the running of the statute of limitations. The Court must determine if the acts that allegedly occurred from August 31, 2007, until Plaintiff's employment ended give rise to her claimed intentional torts.

In Illinois, the tort of battery is the unauthorized touching of another person. *See Boyd v. City of Chicago*, 880 N.E.2d 1033, 1043–44 (Ill. App. 2007). Plaintiff does not allege that Barr or any other Illinois Central employee touched her from August 31, 2007, forward. Her battery claim is therefore barred by the statute of limitations. The tort of assault in Illinois is "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 788 (Ill. App. 1982). Again, while Plaintiff sufficiently alleges that Barr made harassing statements, innuendoes, facial expressions, and body language subsequent to August 31, 2007, she never alleges that any act by Barr or another Illinois Central employee during this time put her

in apprehension of an imminent battery.  Therefore, her assault claim is also barred by the statute of limitations.  Defendants' Motion for Summary Judgment is granted on Count VII.

Plaintiff's intentional infliction of emotional distress claim in Count VIII requires a different analysis.  To prove this tort under Illinois law, a plaintiff must show facts that establish (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct.  *See Johnson v. Kmart Corp.*, 723 N.E.2d 1192, 1197 (Ill. App. 2000).  To overcome summary judgment, there must be a material issue of fact for all three elements.  *See id*. at 1198.

In regard to the first element, the Defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.  *See Dunn v. City of Elgin, Ill.*, 347 F.3d 641, 651 (7th Cir. 2003).  The Court has previously detailed Plaintiff's allegations concerning Barr's statements, innuendoes, facial expressions, and body language.  If true, these would certainly be considered as intolerable in a civilized society.  Plaintiff testified that this alleged harassment played a role in causing her anxiety disorder.  Vince Dep., 436:17-22, June 1, 2010.  Finally, because of Plaintiff's alleged requests that Barr stop his harassment, her telling him how

his behavior made her uncomfortable and caused her distress, as well as the severe nature of Barr's alleged conduct, Defendants would know that Plaintiff would probably suffer severe emotional distress.  Plaintiff has properly raised an issue of material fact on all three elements of this tort.  Because she has tendered sufficient evidence that this conduct occurred after August 31, 2007, the statute of limitations does not bar Count VIII.

### 2.  Preemption Defense

The Court next addresses whether the IHRA preempts Plaintiff's intentional infliction of emotional distress and Gender Violence Act claims.  If such preemption is warranted, this Court would lack jurisdiction to hear the claims because an Illinois state court would lack jurisdiction to hear them.  *See Spahn v. Int'l Quality & Productivity Ctr.*, 211 F.Supp.2d 1072, 1074 (N.D. Ill. 2002).

Defendants' preemption argument addresses a nuanced area of law concerning the scope of the IHRA.  The IHRA grants the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations.  775 ILCS 5/8-111 ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.").  The IHRA articulates sexual harassment as a civil rights violation, *id*. at 5/2-102(D), and defines sexual harassment as:

> any unwelcome sexual advances or requests for sexual
> favors or any conduct of a sexual nature when (1)

submission to such conduct is made either explicitly or
implicitly a term or condition of an individual's
employment, (2) submission to or rejection of such
conduct by an individual is used as the basis for
employment decisions affecting such individual, or (3)
such conduct has the purpose or effect of substantially
interfering with an individual's work performance or
creating an intimidating, hostile or offensive working
environment.

*Id*. at 5/2-101(E). Under its plain language, the Act preempts
civil rights violations that it covers.

The Supreme Court of Illinois has twice addressed IHRA
preemption. In *Geise v. Phoenix Co. of Chicago, Inc*., 639 N.E.2d
1273, 1276–78 (Ill. 1994), the court addressed whether the IHRA
preempted claims for negligent retention and negligent hiring of
the employee who plaintiff claimed sexually harassed her. The
court held that plaintiff's tort claims were inextricably linked
with the duties set forth in the IHRA. This allegation of a civil
rights violation invoked the jurisdictional bar. *Id*. at 1277–78.
In *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997), the
Supreme Court of Illinois clarified that *Geise* did not stand for
the proposition that the IHRA barred an Illinois court from
exercising jurisdiction over all tort claims factually related to
the alleged sexual harassment. Rather, in holding that the circuit
court could exercise jurisdiction over plaintiff's assault,
battery, and false imprisonment claims, the court found that "[a]
legislative intent to abolish all common law torts factually
related to sexual harassment is not apparent from a plain reading

of the statute." *Id*.   It found that common law tort actions and actions to redress civil rights violations have distinct purposes, and that as long as a plaintiff establishes the elements of a common law tort independent of the legal duties created by the IHRA, the court retains jurisdiction over the tort claims. *See id*. In applying these Supreme Court of Illinois decisions, the Seventh Circuit has stated that when a plaintiff's factual allegations of intentional infliction of emotional distress and harassment are identical, the IHRA preempts the claim.   *See Quantock v. Shared Marketing Services, Inc*., 312 F.3d 899, 905 (7th Cir. 2002); *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999).   These decisions are not so clear-cut, however, as the IHRA does not preempt torts that do not depend on a civil rights violation. *See Naeem v. McKesson Drug Co.,* 444 F.3d 593, 604 (7th Cir. 2006).   The *Naeem* decision approved of the reasoning in a line of court cases in which a district court centered its preemption decision on the legal duty the defendant allegedly violated.   *Id*. at 603 n.4 (citing *Arnold v. Janssen Pharmaceutica, Inc*., 215 F.Supp.2d 951, 955 (N.D. Ill. 2002) ("[T]he duty not to intentionally and knowingly inflict severe emotional distress derives from common law, not statutory law.   That extreme and offensive conduct might also constitute sexual harassment . . . under state or federal civil rights laws does not affect the viability of a tort claim for intentional infliction of emotional

distress."); *Spahn*, 211 F.Supp.2d at 1076 ("[T]he critical analysis focuses on legal duties, not facts."); *Roberts v. Cnty. of Cook*, 213 F.Supp.2d 882, 887 (N.D. Ill. 2002) (retaining subject matter jurisdiction over an intentional infliction of emotional distress claim coupled with a discrimination claim, even though both contained sexual elements, because "[i]ntentional infliction of emotional distress is a 'long recognized' tort action that exists independently of a cause of action under the IHRA.")).

Turning to Plaintiff's claim, the Court must determine if Defendants' alleged sexual harassment would constitute an actionable cause of action for intentional infliction of emotional distress despite its character as a civil rights violation. *See Naeem*, 444 F.3d at 604. Plaintiff has presented allegations that over the course of about three years, Barr, among other actions that she considered sexual harassment, attempted to kiss her; touched her breasts, thigh, back, and buttocks; made numerous comments about her body and his desire to have sexual relations with her; propositioned her for sex; on one occasion lifted up her shirt and bra and forced her to touch his exposed penis; talked about his sexual experiences and made sexual jokes when in her presence; and grabbed his crotch and made sexually suggestive gestures with his tongue when he was with her. Plaintiff claims that all of these actions were unwelcome, that she told Barr this and had to push him away from her on several occasions, and that

she complained about 10 to 15 times to Keona Peters, who worked in human resources at Illinois Central, about this behavior. She claims that the harassment was so severe that it caused her to have reactions such as crying and vomiting at work, and contributed to her anxiety disorder. This behavior allegedly continued until her employment at Illinois Central ended. Her allegations establish the elements of the common law tort of intentional infliction of emotional distress, which existed before the legal duties that emerged with the enactment of the IHRA. *See Maksimovic*, 687 N.E.2d at 24. Therefore, the IHRA does not preempt this claim, so Defendants' Motion for Summary Judgment is denied on Count VIII.

The same reasoning applies to Defendants' argument that the IHRA preempts Plaintiff's claim under the Illinois Gender Violence Act. The Act defines gender violence, in part, as "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex" and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." 740 ILCS 82/5. A seven-year statute of limitations exists to bring a claim under the Gender Violence Act. *Id*. at 82/20. In Illinois, "a person commits battery if he intentionally or knowingly without legal justification and by any means . . . makes physical contact of an insulting or provoking nature with an individual." *Id*. at

5/12-3. Plaintiff's aforementioned allegations of Barr's actions meet the elements of battery. As such, they provide grounds for a cause of action under the Illinois Gender Violence Act, which establishes legal duties separate from those created by the IHRA. Therefore, because the Court has jurisdiction over this claim, Defendants' Motion for Summary Judgment on Count IX is denied.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted on Counts II, IV, V, VI, and VII, and denied on Counts I, III, VIII, and IX.

**IT IS SO ORDERED.**

_____
       Harry D. Leinenweber, Judge
       United States District Court

**DATE:**     February 9, 2011